IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VITALSTIM, LLC, et al.,

   Plaintiffs,

   v.

ESWALLOW USA, LLC,

   Defendant.

CIVIL ACTION FILE
NO. 1:12-CV-4169-TWT

**OPINION AND ORDER**

This is a patent infringement suit concerning a treatment for dysphagia. It is before the Court for a Claims Construction Order regarding the disputed claims in U.S. Patent No. 5,725,564 ('564), U.S. Patent No. 5,987,359 ('359), U.S. Patent No. 6,104,958 ('958), and U.S. Patent No. 7,280,873 ('873).

**I. Background**

The Plaintiffs – VitalStim LLC, ESD LLC, DJO LLC, and Empi LLC – own four related patents covering certain methods and devices for treating dysphagia, a medical condition characterized by difficulty in swallowing. The patented subject matter relates to a procedure known as neuromuscular electrical stimulation therapy. For this, a controlled amount of electrical current is applied to a patient's throat area

which stimulates the muscles to induce swallowing. The precise details of the therapy, such as the amount of electrical current applied, vary from patient to patient.

The '564 Patent was the first of the four patents at issue. The '359 Patent was a continuation of the '564 Patent, and the '958 Patent was a continuation of the '359 Patent. Finally, the '873 Patent was a continuation-in-part of the '359 Patent. A Markman Hearing was held, and the parties disputed the construction of eight claim terms.

## II. Legal Standard

"Claim construction . . . is a question of law." Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004). "[A] claim construction analysis must begin and remain centered on the claim language itself." Id. at 1116. "A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." Id. "In some cases, the ordinary meaning of claim language . . . may be readily apparent . . . and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005). "In such circumstances, general purpose dictionaries may be helpful." Id. In other cases, the Court must refer to sources such

as "the words of the claims themselves[1], the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Safari Water, 381 F.3d at 1116. However, when "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term . . . it is improper to rely on extrinsic evidence." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996).

### III. Discussion

#### A. '564 Patent and '873 Patent

##### 1. "Selectively placing a plurality of electrodes" ('564 Patent col. 8 ll. 8, 12-13, 52, 56; '873 Patent col. 14 ll. 47, 54, 56-57, 62.)[2]

The Plaintiffs argue that the term "plurality" should be given its common meaning: a number greater than one.[3] The Defendant, eSwallow USA LLC, argues

---

[1] "[T]he context in which a term is used in the asserted claim can be highly instructive . . . [and] [o]ther claims of the patent in question . . . can also be valuable sources of enlightenment as to the meaning of a claim term." Phillips, 415 F.3d at 1314.

[2] This claim term is found in both the '564 Patent and the '873 Patent. As neither party argues that the disputed claim term ought to be given a different meaning in each patent, the Court need only address it once.

[3] Plurality: "3. A number greater than one." Random House Dictionary, http://dictionary.reference.com/browse/plurality?s=t (last visited Mar. 5, 2014); Plurality: "The state of being plural." Oxford English Dictionary, http://www.oed.com/view/Entry/146196?redirectedFrom=plurality#eid (last visited Mar. 5, 2014).

that it should mean "pairs" because certain embodiments in the specification call for the placement of "pairs" of electrodes. (Def.'s Claim Construction Br., at 9-10.) The Court concludes that the Plaintiffs' construction is appropriate. First, although the Court may look to the whole patent, "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." Safari Water, 381 F.3d at 1117. "[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using *words or expressions of manifest exclusion or restriction*, representing a *clear disavowal* of claim scope." Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002) (emphasis added). Here, eSwallow simply points to the embodiments where pairs of electrodes are used. However, "an accused infringer cannot overcome the heavy presumption that a claim term takes on its ordinary meaning simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." Id. Second, the premise of the Defendant's argument – that the embodiments found in the patent only contain "pairs" of electrodes – is incorrect. Figure 1 of the '564 patent displays an embodiment that contains three electrodes. ('564 Patent fig. 1.) Accordingly, "a

plurality of electrodes" means "more than one electrode" in both the '564 and '873 Patents.

**2. "A governor for regulating the electrical pulses such that at least one of current so as not to exceed 4.4 milliamps RMS or power so as not to exceed 9.6 MW RMS" ('564 Patent col. 8 ll. 19-22, 64-67.)**

The parties disagree as to whether this is a means-plus-function claim term. Specifically, the Defendant argues that the term "governor" must be interpreted as "means for governing," and thus it does not connote sufficiently definite structure. (Def.'s Claim Construction Br., at 8.) "[A] claim term that does not use 'means' will trigger the rebuttable presumption that § 112 ¶ 6 does not apply." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002). "[T]he presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." Inventio AG v. ThyssenKrupp Elevator Americas Corp., 649 F.3d 1350, 1356 (Fed. Cir. 2011). "[A] limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if it is shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." Massachusetts Inst. of Tech. & Electronics For Imaging, Inc. v. Abacus Software, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (internal quotation marks omitted). In determining "whether the claim limitations should be construed as means-plus-function limitations . . . it is appropriate

to look to extrinsic evidence, including but not limited to dictionaries and expert testimony to assist the trier of fact in understanding the evidence." Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1374 (Fed. Cir. 2003). "If the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption, either for or against the application of § 112, ¶ 6, prevails." Id. at 1372. "This burden must be met by a preponderance of the evidence." Id.

Here, the Defendant has not met its burden of demonstrating that the term "governor," as used in the disputed claim, is insufficiently definite.  First, to support its interpretation of "governor," the Defendant cites to a general-purpose dictionary. However, the Defendant provides no evidence that a person of ordinary skill in the art would ascribe to the term "governor," as it is used in the '564 Patent, a meaning found in a general-purpose dictionary.  If this term holds a unique meaning in the relevant field, that would control.  See Vanderlande Indus. Nederland BV v. I.T.C., 366 F.3d 1311, 1321 (Fed. Cir. 2004) ("[W]here evidence–such as expert testimony credited by the factfinder, or technical dictionaries–demonstrates that artisans would attach a special meaning to a claim term, or, as here, would attach no meaning at all to that claim term (independent of the specification), general-usage dictionaries are rendered irrelevant with respect to that term; a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim

term."). Second, even if the Court were to consult general-purpose dictionaries, the term "governor" would still be sufficiently definite. General-purpose dictionaries defining the term "governor" in the context of a mechanical apparatus – including the dictionary cited by the Defendant, (Def.'s Claim Construction Br., Ex. A.) – indicate that it is a physical attachment providing automatic control.[4] Greater specificity is not required. See Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed. Cir. 2000) ("[T]he claim limitation need not 'connote a precise physical structure.'"); and cf. Duratech Indus. Int'l, Inc. v. Bridgeview Mfg., Inc., 292 Fed. Appx. 931, 933-34 (Fed. Cir. 2008) ("Random House Unabridged Dictionary . . . defines 'manipulator' as a 'mechanical device for the remote handling of objects or materials in conditions not permitting the immediate presence of workers.' . . . Oxford English Dictionary . . . defines the term generally as 'a device used for or in the manipulation of something' and then provides auxiliary definitions for specific types of manipulators . . . these particular definitions

---

[4] Governor: "4 a: an attachment to a machine (as a gasoline engine) for automatic control or limitation of speed . . . b: a device giving automatic control (as of pressure or temperature)." Merriam-Webster, http://www.merriam-webster.com/dictionary/governor (last visited Mar. 5, 2014); Governor: "8. Machinery. A self-acting contrivance for regulating the passage of gas, steam, water, etc., esp. the supply of any one of these to a machine, in order to ensure an even and regular motion." Oxford English Dictionary, http://www.oed.com/view/Entry/80323?redirectedFrom=governor#eid (last visited Mar. 5, 2014).

bolster the conclusion that 'manipulator' is . . . a noun connoting sufficient structure."). Thus, the Court finds that this is not a means-plus-function claim term.

**B. '359 Patent**

The four disputed claim terms in the '359 patent are: (1) "a predetermined frequency," (2) "a predetermined duration," (3) "a predetermined voltage limit," and (4) "a predetermined current limit." ('359 Patent col. 8 ll. 36, 38-39, 42, 45.) The parties disagree as to the meaning of "predetermined" in all four terms. The Plaintiffs argue that a "predetermined" value is one that is determined prior to application of the therapy. The Defendant argues that a "predetermined" value would mean the specific value referenced in the embodiments found in the specification.[5]

The Court agrees with the Plaintiffs. Once more, the Defendant impermissibly attempts to use the specification to limit the scope of the claim terms. See Teleflex, 299 F.3d at 1327. The Defendant can point to no part of the specification where the patentee demonstrated "an intent to deviate from the ordinary and accustomed meaning of [the] claim term by including . . . expressions of manifest exclusion or

---

[5] For example, the Defendant argues that "a predetermined frequency" means "80 hertz," ('359 Patent col. 2 l. 42), and "a predetermined duration" means "300 microseconds," ('359 Patent col. 2 l. 44.)

restriction, representing a clear disavowal of claim scope."[6] Id. at 1325.  In response, the Defendant argues that the Plaintiffs' construction may not be accepted because it is overly broad, and thus indefinite.  This argument incorrectly conflates breadth with indefiniteness. See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1352 (Fed. Cir. 2009) ("Merely claiming broadly does not render a claim insolubly ambiguous, nor does it prevent the public from understanding the scope of the patent.").  Although the term "predetermined" is broad, its meaning is clear.

Additionally, the specification supports the Plaintiffs' reading.  It makes clear that the values will vary from patient to patient in order to achieve the desired effect. For example, the detailed description of the preferred embodiment states that "[t]he current applied will vary depending on the physical condition and tolerance of the patient but the current should be sufficient to produce the desired response and promote the swallowing reflex." ('359 Patent col. 3 ll. 47-51.)  It goes on to state that "the generator continuously generates electrical pulses for a predetermined period of

---

[6] At the Markman Hearing, the Defendant referenced a part of the '359 Patent abstract which reads: "The generator includes a pulse rate modulator for generating each of the electrical pulses having a frequency *generally fixed* at 90 hertz, a pulse width modulator for generating each pulse of the series of electrical pulses at a duration *generally fixed* at 300 microseconds . . .." U.S. Patent No. 5,987,359, at [57] (filed Oct. 23, 1997). This supports the Plaintiff's reading. This language – which suggests values that should *generally* be used – assumes that there may be variation.

time . . . electric pulses are continuously generated and delivered to the electrodes until a complete swallow is achieved or the tolerance level is reached in the patient." ('359 Patent col. 3 ll. 63-67; col. 4 l. 1.) Accordingly, for all four disputed claim terms in the '359 Patent, a "predetermined" value will be construed to mean a value that is determined prior to the administration of the therapy.

### C. '958 Patent

The disputed claim term reads: "output protector circuit is *programmed* to limit said intensity." ('958 Patent col. 8 ll. 34-35; col. 9 ll. 6-7.) eSwallow asserts that this ought to be read as "the output protector circuit limits said intensity." (Def.'s Claim Construction Br., at 11.) In support, eSwallow argues that the word "programmed" should be read out of the claim because its plain meaning "implies the use of a computer-based processor configured with a program, or a list of instructions, for causing such computer-based processor to perform the function" and "the specification is silent as to a computer-based processor." (Def.'s Claim Construction Br., at 11.) The Defendant submits no evidence in support.

This argument is without merit. To begin, it is a "well-established rule that claims are interpreted with an eye toward giving effect to all terms in the claim." Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc., 672 F.3d 1270, 1275 (Fed. Cir. 2012) (internal quotation marks omitted); see also Merck & Co., Inc. v.

Teva Pharm. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). The Defendant cites to no authority suggesting that the Court may render a term meaningless simply because the remainder of the specification does not further elaborate upon it. To the contrary, "[i]n order to comply with the written description requirement, the specification need not describe the claimed subject matter in exactly the same terms as used in the claims." All Dental Prodx, LLC v. Advantage Dental Products, Inc., 309 F.3d 774, 779 (Fed. Cir. 2002).[7] Accordingly, the Court will construe the disputed claim term to include the word "programmed," and it will retain its ordinary and common meaning.

## IV. Conclusion

For the reasons set forth above, the disputed terms in the '564 Patent, '359 Patent, '958 Patent, and '873 Patent will be construed as described above.

SO ORDERED, this __4__ day of April, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[7] Additionally, the Defendant submits no evidence that a circuit cannot be encoded with a set of instructions to perform a particular task.